Catron, Ch. J.
Before the fourth section of the act of 1715, can be comprehended, the second section, the enacting clause of the statute, must be understood, and in that sense in which it has been applied in practice, taken in connexion with, and as explained by the act of 1797. To understand the meaning of the act, we must ascertain for whom, and by whom, it was passed.
In 1715, North Carolina was an infant and feeble colony; the lands belonged to a company of grantees, as lords proprietors, who sold them, or bestowed them on actual settlers, at the charge of office fees, and let them at quit rents. The intercourse with the mother country was extremely limited, and the real owners, the great *251 proprietors, known to the people of the province alone by reputation, if at all. They all resided in England. There, deaths had and did occur, and on people there, descents were cast. This had been the case from 1665, when by the charter of Charles the second, the province was granted. Few of the original lords proprietors were living in 1715, and who the heirs were, it must have been in many cases, impossible for the people of the province to know.
Thus situated, in 1715, they were authorized to legislate for themselves, subject to the restriction, that their acts of legislation should receive the sanction of the King and council. One of the first laws made, was the one now under consideration. The titles were most irregular. , To add to their confusion, the province of Virginia had claimed jurisdiction over that section of country, and her Governors had granted lands there. To settle the titles to lands, it was indispensable that they should be confirmed by legislative means. To this end, the enacting clause declares, that all these irregular titles shall be confirmed, and held valid, where the claimant had theretofore remained in possession of the land seven years; and that such titles in future should be confirmed to the possessor of the land for seven years, without any suit in law against him; that the title should be good and legal to all intents and purposes, against all, and all manner of persons. The act of 1797, points out the description of paper titles, by virtue of which the possession shall be holden.
The enacting clause looked almost exclusively to the protection of the possessor, regardless of the claimant abroad, so “that the expectations of heirs might not in a short time leave much land unpossessed, and the title so perplexed, that no man would know of whom to take or buy land,” as we are told in the conclusion of the fourth section. To this effect is the doctrine adjudged on much consideration, in Hickman’s lessee vs. Gaither and Frost, *252 2 Yerger’s Rep. 204;) to which nothing need be added, Ml, and all manner of persons are barred by the terms of the enacting clause. To this sweeping provision no exceptions can be made by the courts; such as exist must be found in the statute. Does the fourth section exempt infants and femes covert from the operation of the act? Clearly not. The act runs against them, because they have only three years allowed them to sue after full age or discoverture. The act does its office prima facie, in seven years, but the privilege to sue, during the infancy and coverture, and three years thereafter, is reserved to such persons. This they may do, or not do, at their pleasure. If they take no advantage of their right to sue, no one else can. The privilege is personal, and limited to the person, or persons, entitled to .the land, and to sue, when such right of action first accrued. Es-. pecial care was taken by the act of 1715, not to save the bar in favor of the heir of an infant, or feme covert, dying with the right of action. A leading object of the act was to cut off the expectancies of heirs. These expectancies might have run on for many years, and through different generations; they were not limited to small tracts, but to land enough for a kingdom, and presently might overwhelm and destroy the peace and prosperity of avast population. The temptations to pursue and attend to the claims, were few in 1715; but after several descents cast, they would of course become great, by reason of the-rapid increase in value of the lands consequent upon their settlement. Common justice at the hands of the great proprietors required, that the settler who. was subjected to the hardships of commencing agriculture in a wilderness, to which he had-emigrated perhaps from Europe, and where he had to contend with the savage foe, should enjoy his farm in fee, to him, and to his children. Under these circumstances, that any exception was made at all, (where seven years possession had accompanied an'irreg-ylar title,) may perhaps be found in the fact, that the *253 lords proprietors were the legislators to a great extent, and such an act might not have received the sanction of the King and council at home. The ninth section of the forty eighth chapter of the same year, cut off the creditors of deceased persons, if claim was not made within seven years after the death, without a saving in favor of any one.
As to femes covert, infants, &c. when the act of limitations begins to run, it runs on: if the seven years run out, and the feme covert or infant die, no descent of the land or right of action is cast on the heir, more than if the ancestor had been discovert or adult, during the whole seven years. So in this case, where Mrs. Guion died after the act commenced its operation, and died covert, the act run on against her heir, the lessor of plaintiff, although a minor; and at the end of seven years completed and confirmed the title of Burton, under and by virtue of the enacting clause. Had Mrs. Guion lived, and at the end of four years after Burton’s possession commenced, become discovert, and then three years more had run for Burton, she would not have had other three years to sue, but would have been barred, although covert for four years of the seven, because the statute had run against her seven years, and she had been disco-vert three. The enacting clause had done its office for Burton, and she had had all the time the exception to it allowed her.
This court has often holden, and nothing is better settled by it, than that the Legislature having made no exceptions to the enacting and barring clause of the acts of limitation, the courts can malte none; that it would be legislating to do so. The cases of Cocke and Jack vs. M’Gennis, and Hickman’s lessee vs. Gaither and Frost, are to the point, and amongst the best considered cases that have ever come before the court.
Before and about 1319, the construction of the seven years act of limitations had employed more of time and *254 talent m the courts m this section of the State, than any , ,. m other subject. I o no man were they more familiar than to the eminent lawyer who drafted the seven years act of The reasons for allowing no time to the heir to sue after the death of the ancestor, against whom seven years had run whilst such ancestor was an infant or covert, had ceased in 1819, and therefore by that act, the heir is allowed three years to sue after the death; hut this he must do within three y’ears, although he he himself an infant at the death; that this was anew exception, and in addition to those declared by the act of 1715, and that the exception was borrowed from the British Statute, (21 Jac. I,) is a familiar fact. So was the idea of confirmation of title, in opposition to that of a bar only to the remedy, borrowed in the act of 1715, and that of 1819, from the British Statute of fines. The 21 of Jac. I, was modified by the colony of Carolina in 1715, (being then about a century old,), so as to suit the circumstances of the country, and the exception that the heir should have time to sue after the death of the disabled ancestor, for the above reasons designedly left out.
The case of Wilson against Kilcannon, Brice and wife, (in 4 Hayw. Rep. Í82,) was a different case from the present. Whether the personal privilege to sue, continued in Mrs. Brice, after Wilson had holden seven years possession, she being an infant part of the time, and covert after, it will be time to examine when such case may arise. Whether, the two disabilities, or rather exceptions in the statute, occurring in Mrs. Brice’s case, can he run into each other, is a vexed question, to touch which is at present uncalled for. Both the exceptions attached to Mrs. Brice, are in the statute; that claimed in this cause for young Guión, is not in it; and we are asked in effect to insert it by force of the common law, which, it is insisted, never works an injury to infants, because of the lapse of time and laches. This may be, and as a general rule is true; but the act of 1715 altered it, and *255 it stands so altered at this day; for the act of 1819 would not allow the heir to tack his miancy to the cov-erture of the mother, to save the bar. This would be running into perpetuities. The taking of disabilities' in different persons has been rejected by ns since our earliest history; was even rejected in England before our day; is rejected by all our sister States so far as I know, and must of course he rejected in this instance.
GrREEN, J.
In this case, the defendant took possession of the land in controversy during the lifetime of the plaintiff’s mother, she being then covert, and so continuing until her death in-, 1815', at which time the plaintiff was an infant, and so continued until a short time before the suit was brought in 1831.
The principal question arising upon these facts, and which is decisive of the case, is, can the disability of the plaintiff be added' to that of his mother, and thereby save the bar?
The proviso in the act of 1715, ch. 27, sec. 4, provides, that if any person or persons that is, or hereafter shall be entitled to any claim of lands, tenements or he-reditaments, shall, at the time said right or title first descended, accrued, come or fallen, be within the age- of twenty one years, &c. he shall and may, notwithstanding said seven years he expired, commence his, her or their suit, or make his, her or their entry, &c. so as such person or persons shall, within three years next after full age, &e. take benefit and sue for, &c. Upon the construction of this proviso, the case must depend. Of its true meaning,, an attentive examination of its provisions can leave no-doubt. ' The saving in express words is limited to the’ person who may be under any of the disabilities, at the time “the title first descended, accrued, come or fallen.”' Such person, and such alone, who may be under disability to sue at the time the right of action accrued, may sue-within three years next after the disability shall he re *256 moved. The language of the act in my view, excludes the idea that any successive disability should be superad-de(j to that which existed at the time the right of action ae-crued. The meaning is the same, as though the Legislature had said, that if any person shall be entitled to a claim of lands, and shall be, at the time the title first descends, within twenty one years of age, then such person may, notwithstanding the said seven years be expired, commence his suit, or malte his entry as he might have done before this act, so as such person shall, within three years next after coming of full age, take benefit and sue for the same: or if he shall, when such right accrues, be non compos mentis, he may in like manner sue, after he shall become of sound mind, &c.
The act, in this proviso, intended to save the party having a right falling upon him while under disability, from the operation of the bar during the continuance of such disability, and for three years afterwards, but not from its operation during any other disability, not existing at the time the action first accrued,- but under which he may have been ■placed subsequently, and before he was free from the former. As the court say in Shute vs. Wade, the time when the right accrues is the period fixed to determine the situation of the party, whether he be exposed to or saved from the operation of the statute; and if at that time, he be under any disability mentioned in the act, he shall not lose his right by neglecting to sue, until three years after the removal of that disability. The act does not look forward to subsequent disabilities, either in the same person or his heirs. No provision is made for such cases. Existing circumstances at the time the right or title first descended, are provided for, and none other. Therefore infants are not saved if the action accrued in the lifetime of the father, although he may die one day afterwards, when it will be impossible for him to sue; nor for the same reason, are they saved in personal joint actions, should one, entitled jointly with them, be of full age when the action *257 accrues. I mention these cases to show that cases of lii- i • • . i • , , Hardship and inconvenience can have nothing to do with the construction of this statute. We must look to its language for the meaning of the Legislature, and give to that language the construction its obvious sense indicates. Looking at it in this way, it appears to me, the obvious sense is that which I have suggested.
Although I think that no disability subsequently occurring can be added to that existing at the time the right to sue accrued, yet it must be manifest, that when such disability exists in another person than the one to whom the right of action first came, the language of the proviso much more plainly excludes him from the saving. 6 East, 80: 3 Con. Rep. 226: 2 Preston, 341.
It is unnecessary to discuss the question, whether the act of 1819 operates in this case, as I think by the plain meaning of the act of 1715 the plaintiff is -barred. I cannot however perceive any reason opposed to the constitutional operation of the act of 1819. The whole seven years from the time the defendant took possession of the land in controversy, had not expired at the time the act was passed. This act, in declaring that no cumulative disability shall be allowed, would only operate to shorten the time within which he must sue. Such a pro* vision is clearly within legislative competency. 6 Peter’s Rep. 124. Therefore, if the act of 1715 were construed as the plaintiff contends it ought to be, still he would be barred by the act of 1819.
For these reasons, I concur in affirming the judgment in this case.
Wiiyte, J. concurred.
Peck, J. dissented.
Judgment affirmed.